IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

NATHAN E. LOCKE,                    §
                                    §
        Plaintiff,                  §
                                    §
V.                                  §        CIVIL ACTION NO. H-09-1178
                                    §
MICHAEL ASTRUE,                     §
COMMISSIONER OF THE SOCIAL          §
SECURITY ADMINISTRATION,            §
                                    §
        Defendant                   §

## <u>MEMORANDUM AND ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>

Before the Court[1] in this social security appeal is Plaintiff's Motion for Summary Judgment (Document No. 7) and Response to Defendant's Motion for Summary Judgment (Document No. 13), and Defendant's Motion for Summary Judgment (Document No. 11) and Memorandum in Support and Response to Plaintiff's Motion for Summary Judgment (Document No. 12). Having considered the cross motions for summary judgment, the administrative record, and the applicable law, the Court ORDERS, for the reasons set forth below, that Plaintiff's Motion for Summary Judgment (Document No. 7) is DENIED, Defendant's Motion for Summary Judgment (Document No. 11) is GRANTED, and the decision of the Commissioner is AFFIRMED.

---

[1] The parties consented to proceed before the undersigned Magistrate Judge on December 7, 2009. (Document No. 9).

## I.   Introduction

Plaintiff Nathan Locke ("Locke") brings this action pursuant to Section 205(g) of the Social Security Act ("Act"), 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security Administration ("Commissioner") denying his application for disability insurance benefits.  Locke argues that the Commissioner's decision to terminate his disability benefits was erroneous because:  (1) the Commissioner failed to file a complete transcript containing:

> (1) Whether the ALJ's opening statement (if any), in the June 2007 proceedings advised the *Pro Se* Movant of all of the issues in the case; (2) Whether the ALJ fully and fairly advised the Pro Se Movant of his absolute right to an attorney; (3) Whether Movant was administered an Oath in the June 2007 proceedings; (4) Whether the Vocational Expert was administered an Oath in the June 2007 proceedings; and (5) What evidence was discussed and adduced prior to the initial record words on T. 226; the Transcript begins after the proceedings have already commenced.

(Document No. 7 at 6); (2) the Administrative Law Judge ("ALJ") failed to grant Locke's request for issuance of a subpoena; (3) the ALJ erred by disregarding the treating physician's findings of disability; (4) the ALJ erred in evaluating Locke's mental impairments; and (5) the ALJ erred by finding that Locke could perform competitive sedentary unskilled work which would accommodate his need to sit and stand at will.  (Document No. 7 at 2).  The Commissioner, in contrast, contends there is substantial evidence in the record to support the ALJ's decision that Locke was not disabled and the decision comports with applicable law.  In particular, the Commissioner asserts the Administrative Record supported the ALJ's determination; the ALJ properly denied Locke's request for a subpoena; the ALJ properly considered but rejected the treating physician's statements; the ALJ properly determined that Locke did not have a psychological impairment; and the ALJ properly determined that Locke could perform sedentary work with additional limitations.

2

## II.   Administrative Proceedings

On December 15, 1986, Locke applied for a period of disability and disability insurance benefits under Title II of the Social Security Act. (Tr. 23). Locke alleged he had been disabled since December 31, 1985, because of back pain stemming from a work related injury that occurred May 17, 1983. (Tr. 23, 193). The Social Security Administration denied the application initially and upon reconsideration. (Tr. 23). On February 24, 1988, Locke filed a request for an ALJ hearing and on February 24, 1988, ALJ Cosentino issued a decision finding Locke disabled as of April 30, 1986, and awarding a period of disability. (*Id.*).

On April 17, 2004, the Social Security Administration issued Locke a Notice of Continuing Disability Review. (Tr. 34-37). Subsequently, on January 13, 2005, the Social Security Administration notified Locke it had determined he was no longer disabled as of January 2005. (Tr. 38-41). On January 21, 2005, Locke filed a request for reconsideration; however, he failed to appear at the Disability Determination Services (DDS) hearing and, on March 24, 2006, the examiner denied the request for reconsideration based on Locke's failure to cooperate. (Tr. 42-44, 45-53).

After the DDS examiner's determination, Locke filed a request for a hearing before an ALJ, and the Social Security Administration granted his request. (Tr. 57-60, 61-63). ALJ J. Frederick Gatzke held an initial hearing on June 8, 2007, and a supplemental hearing on December 11, 2007. (Tr. 224-56, 257-86). On February 28, 2008, the ALJ issued a decision finding that Locke had experienced medical improvement related to his ability to work and, therefore, Locke's disability had ceased January 31, 2005. (Tr. 20-31).

Locke sought review of the ALJ's adverse decision with the Appeals Council on April 11, 2008. (Tr. 18). The Appeals Council will grant a request to review an ALJ's decision if any

of the following circumstances are present: (1) it appears that the ALJ abused his discretion; (2) the ALJ made an error of law in reaching his conclusion; (3) substantial evidence does not support the ALJ's actions, findings or conclusions; or (4) a broad policy or procedural issue may affect the public interest. 20 C.F.R. § 404.970; 20 C.F.R. § 416.1470. On February 20, 2009, the Appeals Council denied Locke's request for review, and the ALJ's February 28, 2008 decision thus became final. (Tr. 10-12).

After the Appeals Council granted Locke's request for more time to file a civil action, Locke filed a timely appeal of the ALJ's decision. (Tr. 4-5). Locke then filed a Motion for Summary Judgment and a Response to Defendant's Motion for Summary Judgment. (Document Nos. 7 & 13). The Commissioner also filed a Motion for Summary Judgment and Memorandum in Support and Response to Plaintiff's Motion for Summary Judgment. (Document Nos. 11 & 12). The appeal is now ripe for ruling.

## III.     Standard of Review of Agency Decision

The court's review of a denial of disability benefits is limited "to determining (1) whether substantial evidence supports the Commissioner's decision, and (2) whether the Commissioner's decision comports with relevant legal standards." *Jones v. Apfel*, 174 F.3d 692, 693 (5th Cir. 1999). Title 42, Section 405(g) limits judicial review of the Commissioner's decision: "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." The Act specifically grants the district court the power to enter judgment, upon pleadings and transcript, "affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the case for a rehearing" when not supported by substantial evidence. 42 U.S.C. § 405(g). While it is incumbent upon the court to

examine the record in its entirety to decide whether the decision is supportable, *Simmons v. Harris*, 602 F.2d 1233, 1236 (5th Cir. 1979), the court may not "reweigh the evidence in the record, nor try the issues de novo, nor substitute [its] judgment for that of the [Commissioner] even if the evidence preponderates against the [Commissioner's] decision." *Johnson v. Bowen*, 864 F.2d 340, 343 (5th Cir. 1988); *see also Jones*, 174 F.3d at 693; *Cook v. Heckler*, 750 F.2d 391, 392-93 (5th Cir. 1985). Conflicts in the evidence are for the Commissioner to resolve. *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992).

The United States Supreme Court has defined "substantial evidence" as used in the Act to be "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence is "more than a scintilla and less than a preponderance." *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993). The evidence must create more than "a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)(quoting *Hemphill v. Weinberger*, 483 F.2d 1137 (5th Cir. 1973)).

## IV.    Burden of Proof

An individual claiming entitlement to disability insurance benefits under the Act has the burden of proving his disability. *Johnson*, 864 F.2d at 344. The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C.

5

§ 423(d)(1)(A).  The impairment must be proven through medically accepted clinical and

laboratory diagnostic techniques.  42 U.S.C. § 423(d)(3).  The impairment must be so severe as

to limit the claimant in the following manner:

> [He] is not only unable to do [his] previous work but cannot, considering [his] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for [him], or whether [he] would be hired if [he] applied to work.

42 U.S.C. § 423(d)(2)(A).  The mere presence of impairment is not enough to establish that one

is suffering from a disability.  *Anthony*, 954 F.2d at 293.  Rather, a claimant is disabled only if he

is "incapable of engaging in any substantial gainful activity."  *Anthony*, 954 F.2d at 293 (quoting

*Milam v. Bowen*, 782 F.2d 1284, 1286 (5th Cir. 1986)).

The Commissioner applies a five-step sequential process to decide disability status:

1.  If the claimant is presently working, a finding of "not disabled" must be made;

2.  If the claimant does not have a "severe impairment" or combination of impairments, [he] will not be found disabled;

3.  If the claimant has an impairment that meets or equals an impairment listed in Appendix 1 of the Regulations, disability is presumed and benefits are awarded;

4.  If the claimant is capable of performing past relevant work, a finding of "not disabled" must be made; and

5.  If the claimant's impairment prevents him from doing any other substantial gainful activity, taking into consideration his age, education, past work experience and residual functional capacity, he will be found disabled.

*Anthony*, 954 F.2d at 293; *see also Leggett v. Chater*, 67 F.3d 558, 563 n.2 (5th Cir. 1995); *Wren*

*v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991).  Under this formula, the claimant bears the burden

of proof on the first four steps of the analysis to establish that a disability exists.  *McQueen v.*

*Apfel*, 168 F.3d 152, 154 (5th Cir. 1999).  If successful, the burden shifts to the Commissioner, at

step five, to show that the claimant can perform other work. *Id.* Once the Commissioner shows

that other jobs are available, the burden shifts, again, to the claimant to rebut this finding.

*Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990). If at any step in the process the

Commissioner determines that the claimant is or is not disabled, the evaluation ends. *Leggett*, 67

F.3d at 564.

In the present case, the ALJ determined Locke was not presently engaged in substantial

gainful work (step one); Locke's degenerative disc disease in the lumbar spine, bilateral knee

osteoarthritis, and obesity were severe impairments (step two); and these conditions, when

considered both singly and in combination, did not meet or equal an impairment listed in

Appendix 1 of the regulations (step three). Moreover, the ALJ found Locke's impairments

precluded him from doing his past work (step four); however, the ALJ determined Locke's

impairments did not prevent him from performing some substantial gainful activity (step five).

(Tr. 30-31). Specifically, the ALJ, taking into consideration Locke's age, educational

background, past work experience and residual functional capacity (RFC), found Locke could

work as a small product assembler, small parts inspector, or hand production worker, and

determined a significant number of these positions existed in the national economy. (Tr. 31). In

this appeal, the Court must determine whether substantial evidence supports the ALJ's step five

finding, and whether the ALJ used the correct legal standards in arriving as that conclusion.


**V.      Discussion**

In determining whether substantial evidence supports the ALJ's decision, the court

weighs four factors: (1) the objective medical facts; (2) the diagnosis and expert opinions of

treating physicians on subsidiary questions of fact; (3) subjective evidence of pain as testified to

by the plaintiff and corroborated by family and neighbors; and (4) the plaintiff's educational

background, work history, and present age. *Wren*, 925 F.2d at 126.

In this case, Locke contends the Court cannot determine whether substantial evidence

exists to support the Commissioner's decision and remand is appropriate because the

Commissioner filed an incomplete administrative hearing transcript.  (Document No. 7 at 5-6).

Despite this argument, the administrative record is sufficient to allow judicial review because

Locke has not shown the missing parts of the transcript render the record "patently inadequate to

support the findings the ALJ made." *Thompson v. Schweiker*, 665 F.2d 936, 941 (9th Cir. 1982).

Even if Locke was not fully informed of his right to counsel at the hearing, Locke has failed to

meet his burden of demonstrating the result of his hearing would have been different had he been

represented by counsel. *McKinney v. Barnhart*, 100 Fed. Appx. 978, 980 (5th Cir. 2004).  The

record provides adequate evidence to allow for judicial review and a remand of the case due to

minor incompleteness of the administrative hearing transcript is unwarranted.

### A. Objective Medical Evidence

The objective medical evidence indicates Locke had complained of and been treated for

lower back pain, which radiated to his lower extremities.  (Tr. 86-127, 130-32, 193-197).  The

medical records show Locke suffered a work-related injury in May 1983 resulting in lower back

pain.  (Tr. 130, 227).    Locke's pain progressed following the injury, leading him to seek

medical evaluation and treatment, including back surgery in 1987.  (Tr. 130, 193, 229).

The records indicate Locke sought treatment from Dr. Edward Guinn, a general

practitioner, for the back pain he suffered as a result of his injury.  (Tr. 86-127, 130-32, 193-97).

Locke first began visiting Dr. Guinn in July 1988.  (Tr. 127).  Dr. Guinn saw Locke fairly

regularly from July 1988 to November 1999.  (Tr. 87-127).  During this time period, Dr. Guinn's

treatment of Locke was for the most part narcotic in nature.  (Tr. 86-127).  The evidence indicates Locke used prescription drugs prescribed by Dr. Guinn for a significant period of time; including Vicodin, Hydrocodone, Amoxil, Tussi-Organidan, and Celebrex, among others.  (Tr. 86-127, 130-32, 193-97).  Dr. Guinn used these medications to combat, what he referred to in his notes as, Locke's low back strain or lumbosacral neuritis.  (*Id.*).

However, from November 1999 to February 2005, Dr. Guinn did not see nor treat Locke. (Tr. 87).  In addition, after Locke visited Dr. Guinn in April 2005, a year passed before Locke again sought Dr. Guinn's treatment the following year in April 2006.  (Tr. 132).  At these intermittent visits, narcotics were again Dr. Guinn's treatment of choice.  (Tr. 87, 132).  On February 4, 2005, Dr. Guinn prescribed Locke Bextra and Vicodin for lumbosacral neuritis and muscle spasms.  (Tr. 87).  The medical records for a subsequent visit by Locke on April 1, 2005 indicated Dr. Guinn prescribed Vicodin, Amoxil, and Tussi-Organidan; he made no note of any clinical observations.  (Tr. 132).  When Locke next saw Dr. Guinn on April 17, 2006, Guinn had decided to "try TCA instead of narcotics," and also planned to refer Locke to an orthopedist, Dr. Stephen Brotherton, to re-evaluate Locke's spinal anatomy.  (*Id.*).  However, there is no evidence in the record Locke ever visited the orthopedist to have his condition re-evaluated.  Dr. Guinn prescribed Locke Elavil on the April 17, 2006, visit, but during an April 20, 2006, follow-up Dr. Guinn noted in his records Locke refused to take Elavil because of the drug's "mental nature." (*Id.*).  Further, in the notes from the aforementioned visit, Dr. Guinn mentioned that he would try another medicine, Tegretol, although he was not convinced narcotics were the only answer. (*Id.*).  The evidence shows Locke followed up with Dr. Guinn again on June 20, 2006, at which time Locke indicated he would not use Tegretol, but would try "something for pain."  (*Id.*).

Based on Locke's assertion, as well as Dr. Guinn's hesitancy to continue narcotics because of Locke's alcohol use, Dr. Guinn prescribed a regiment of Celebrex.  (Tr. 131).

The evidence shows Locke did not receive further treatment from Dr. Guinn after the June 20, 2006, visit until Locke went in for evaluation on June 5, 2007.  (*Id.*).  After that visit, Dr. Guinn reported on Locke's condition, finding:

> Physical findings at the present time include limitation of ambulatory effort moderated by pain aggravated by activity.  There is tenderness to palpation over the lumbosacral area of the spine and the sacroiliac joints bilaterally.  Straight leg raising is 15-20% of normal with pain referred to the low back area on active and passive movements.
>
> Mr. Locke has been previously determined to be totally and permanently disabled. Those impressions still are valid by the undersigned examiner.
>
> DIAGNOSES:  1)  Low back strain (job related).
> 2)  Muscle spasm involving the low back and the lower extremities.
> 3)  Status post lumbar laminectomy and diskectomy.
>
> MANAGEMENT:    Management has included myogesic muscle relaxant medication and limited prescribed activity.
>
> PROGNOSIS:  Total and permanent disability.

(Tr. 130).  On September 11, 2007, Locke was scheduled to visit Dr. Guinn for another check-up but did not show up; however, the records indicate Locke returned two days later on September 13, 2007, and was prescribed Vicodin.  (Tr. 196-97).

On October 3, 2007, Locke attended a consultative examination by Dr. Ade L. Adedokun, as requested by the ALJ.  (Tr. 140, 250-51).  Dr. Adedokun reported as follows:

> Mr. Locke was seen in the clinic for evaluation.  The patient is a 46-year-old African-American male with a history of previous back surgery by Drs. Wheeler and Donald Malone.  The patient continued to have pain postsurgical.  He had a report of an EMG/NCS done postop.  He is also complaining of right shoulder pain.  Otherwise the patient has remained essentially medically stable.  The patient had been followed by Dr. Ed Guinn for pain management.  He is presently on hydrocodone.  The patient is complaining of numbness and tingling and pain

causes his legs to "lock up." He is complaining of back [pain] which radiates down the lower extremities. He rates his pain as a 10 on a scale of 1/10.

FUNCTIONAL HISTORY:   The patient is independent with ADLs and ambulates without any assistive device. The patient initially stated he was unable to dress and undress himself, requires help from staff to undress himself, but was able to dress himself with no help. He refused to walk on his tiptoes, heels, hop, or do the tandem gait secondary to pain and fear of falling.

EXTREMITIES:   Extremities show slight edema bilaterally.   The patient has evidence of osteoarthritis of bilateral knees.

NEUROLOGIC:   Cranial nerves II-XII appear to be grossly intact.   Manual muscle testing was very, very difficult.   The patient was complaining of pain, even with slight touching of both extremities. The patient did not give full effort secondary to pain complaints. Upper extremity evaluation was also very painful, per patient. The patient did not give a full effort secondary to pain complaints. He admits decreased sensation of the medial aspect of bilateral feet.   Manual muscle testing at least 4/5 with give-way weakness. DTR 1/4. Sensation intact.

ASSESSMENT:
1. History of lumbar laminectomy with fusion.
2. Morbid obesity.
3. Osteoarthritis of bilateral knees.

RECOMMENDATIONS:
The patient exhibited evidence of symptom magnification. He did not give a full effort for his physical examination.

(Tr. 140-42). Dr. Adedokun also had x-rays made of Locke's spine, which revealed:

It appears the patient has bony fusion masses along the posterior elements from L3 down to the sacrum. There is disk space narrowing at L3-4, L4-5, and L5-S1. No fracture or bony destructive lesion is identified. There is a small amount of gas in the L3-4 interspace, indicating disk degeneration.

(Tr. 143). In addition, Dr. Adedokun included in his orthopedic consultative examination report

his determinations regarding Locke's ability to do work-related activities on a regular and

continuous basis. (Tr. 144-49). In particular, Dr. Adedokun found Locke could frequently lift

and/or carry up to twenty pounds. (Id.). Dr. Adedokun found that Locke was able to sit for six

hours at one time without interruption, as well as stand or walk for four hours at one time

11

without interruption. (Tr. 145). Likewise, Dr. Adedokun determined that Locke could sit for a total of eight hours during a work day and also stand or walk for a total of six hours in a work day. (*Id.*).

After evaluation by the ALJ recommended orthopedist, Locke returned to Dr. Guinn for treatment on October 9, 2007, November 16, 2007, and December 14, 2007. (Tr. 195, 197). Subsequent to Locke's last visit, Dr. Guinn drafted a second medical report dated December 18, 2007, commenting on Locke's condition:

> X-RAY EVALUATION:  X-ray evaluation post surgery including plain film and MRI film of the low back area showed narrowing of L3-L4, L4-L5, and L5-S1 disk spaces. There also is evidence of fusion involving posterior element from L3 down to S1.
>
> PHYSICAL EXAMINATION:  Positive physical findings have included a healed surgical scar in the lumbar area consistent with lumbar laminectomy.  There is tenderness to palpation over the lumbosacral area of the spine and the paraspinal muscles in the lumbar area.  Attempt at passive straight leg raising was 0.  Active straight leg raising was approximately 5% of normal with pain referred to the low back area.  Deep tendon reflexes in the lower extremities were 0.  Mr. Locke has essentially no significant skeletal muscle strain involving the lower extremities or any activity that involves utilizing the muscles of the low back area.
>
> MANAGEMENT:   Management has included myogesic muscle relaxant medication, rest and home exercises.  This regimen has been useful in symptomatic stabilization.
>
> DIAGNOSES:  1)  Low back strain, job related.
> 2)  Status post lumbar laminectomy, diskectomy and fusion.
> 3)  Neuritis and muscle spasm related to job related injury and subsequent lumbar laminectomy, diskectomy and fusion.
>
> PROGNOSIS:  Total and permanent disability.

(Tr. 193-94). Locke again returned to Dr. Guinn for treatment on January 14, 2008, and was prescribed Amoxil, Tussi-Organidan, Amitriphyline, and Hydrocodone. (Tr. 195). Still, there is nothing in Dr. Guinn's records to indicate that Locke, subsequent to his initial back surgery, ever sought a remedy other than medication to combat his back pain. (Tr. 86-127, 130-32, 193-97).

On April 8, 2008, Locke visited Dr. Joe E. Wheeler, a neurosurgeon, at the request of Dr.

Guinn. (Tr. 217). Dr. Wheeler noted:

> PHYSICAL EXAMINATION:  Straight leg raising is negative to 90 degrees
> bilaterally.  He does not stand well on his toes, but he can stand on his heels.  On
> examination of his back he has a healed midline scar from previous surgery.
> There is no tenderness of the interspinous ligament, sacroiliac area or sciatic
> notch.  There are no paraspinous lumbar muscle spasms.  I see no muscle
> faciculations or atrophy.
>
> RECOMMENDATION:
> 1.  MRI of his lumbar spine with and without gadolinium.

(Tr. 218).  On April 21, 2008, following his visit with Dr. Wheeler, Locke had an MRI taken of

his back.  (Tr. 220-22).  Locke returned to Dr. Wheeler on May 22, 2008, so the doctor could

review the MRI results.  (Tr. 216).  Upon his review of the MRI results, Dr. Wheeler suggested

that Locke submit to a myelogram and CT scan.  (*Id.*).  The records indicate Locke returned to

Dr. Wheeler again on June 19, 2008, so the doctor could review the films and reports from the

myelogram and CT scan.  (Tr. 223).  The ALJ did not review Dr. Wheeler's records because

Locke's visits to the doctor came after the ALJ issued his decision regarding Locke's disability

status; however, the Appeals Council reviewed the doctor's reports and found that the

information provided no basis for changing the ALJ's decision.  (Tr. 11).

Here, substantial evidence supports the ALJ's finding Locke's degenerative disc disease

in the lumbar spine, bilateral knee osteoarthritis and obesity were severe impairments at step two.

Likewise, as the ALJ concluded, none of the objective medical facts indicate the impairments,

individually or in combination, are sufficient to establish that Locke is disabled as defined by the

Act.  Furthermore, substantial evidence supports the ALJ's finding Locke was unable to perform

his past relevant work, but retained the RFC for sedentary work.  The ALJ, in consideration of

the totality of the evidence, concluded Locke had regained the exertion capacity for an enhanced

13

range of sedentary work activities, as of January 31, 2005, and gave specific reasons in support of this determination.[2]  Also, despite the additional medical records from Dr. Wheeler, the Appeals Council found no basis to review the ALJ's decision concerning Locke.  This factor weighs in favor of the ALJ's decision.

## B. Diagnosis and Expert Opinion

The second element considered is the diagnosis and expert opinions of treating and examining physicians on subsidiary questions of fact.  Unless good cause is shown to the contrary, "the opinion, diagnosis, and medical evidence of the treating physician, especially when the consultation has been over a considerable amount of time, should be accorded considerable weight." *Perez v. Schweiker*, 653 F.2d 997, 1001 (5th Cir. 1981).  For the ALJ to give deference to a medical opinion, however, the opinion must be more than a conclusion and must be supported by clinical and laboratory findings.  *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985); *Oldham v. Schweiker*, 660 F.2d 1078 (5th Cir. 1981).  Indeed, "[a] treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with…other substantial evidence.'" *Newton v. Apfel*, 209 F.3d 488, 455 (5th Cir. 2000)(quoting *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995)).  The opinion of a medical specialist is generally accorded more weight than opinion of non-specialists.  *Newton*, 209 F.3d at 455.  However, "'[t]he Commissioner is free to reject the opinion of any physician when the evidence supports a contrary conclusion.'" *Martinez*, 64 F.3d

---

[2] Based on a new December, 2009 Social Security Application, the Social Security Administration determined Locke was disabled as of April 08, 2008.  (Document No. 13 at 5).  However, "[w]hether a subsequent application was approved is of no moment to the question of whether the prior application was meritorious at the time of consideration." *Winston ex rel. D.F. v. Astrue*, 341 Fed. Appx. 995, 998 (5th Cir. 2009).  Furthermore, the ALJ's determination can only be altered if "there is a conspicuous absence of credible choices or no contrary medical evidence." *Winston ex rel. D.F.*, 341 Fed. Appx. At 998(quoting *Hames*, 707 F.2d at 164).  In this case, the ALJ considered the totality of the evidence and, based on the weight of that evidence, was correct in determining Locke was no longer disabled as of January 31, 2005.

at 176 (quoting *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987)).  Further, regardless of

the opinions and diagnoses of medical sources, "the ALJ has sole responsibility for determining

a claimant's disability status."  *Martinez*, 64 F.3d at 176.

The Social Security Regulations provide a framework for the consideration of medical

opinions.  Under 20 C.F.R. §§ 404.1527(d)(2)-(6), 416.927(d)(2)-(6), consideration of a

physician's opinion must be based on:

> (1) the physician's length of treatment of the claimant, (2) the physician's
> frequency of examination, (3) the nature and extent of the treatment relationship,
> (4) the support of the physician's opinion afforded by the medical evidence of
> record, (5) the consistency of the opinion with the record as a whole, and (6) the
> specialization of the treating physician.

*Newton*, 209 F.3d at 456.  While opinions of treating physicians need not be accorded controlling

weight on the issue of disability, in most cases such opinions must at least be given considerable

deference.  *Id.*  Again, the Social Security Regulations provide guidance on this point.  Social

Security Ruling 96-2p provides:

> [A] finding that a treating source medical opinion is not well supported by
> medically acceptable clinical and laboratory diagnostic techniques or is
> inconsistent with the other substantial evidence in the case record means only that
> the opinion is not entitled to "controlling weight," not that the opinion should be
> rejected.  Treating source medical opinions are still entitled to deference and must
> be weighted using all of the factors provided in 20 C.F.R. 404.1527 and 416.927.
> In many cases, a treating source's medical opinion will be entitled to the greatest
> weight and should be adopted, even if it does not meet the test for controlling
> weight.

Social Security Ruling (SSR) 96-2p, 61 Fed. Reg. 33490 (July 2, 1996).  With regard to the

weight to be given "Residual Functional Capacity Assessments and Medical Source Statements,"

the Rule provides that "adjudicators must weigh medical source statements under the rules set

out in 20 C.F.R. 404.1527…providing appropriate explanations for accepting or rejecting such

opinion."  *Id.*  The Fifth Circuit adheres to the view that before a medical opinion of a treating

physician can be rejected, the ALJ must consider and weigh the six factors set forth in 20 C.F.R.

§ 404.1527(d). *Newton*, 209 F.2d at 456. "The ALJ's decision must stand or fall with the

reasons set forth in the ALJ's decision, as adopted by the Appeals Council." *Id.* at 455; *see also*

*Cole v. Barnhart*, 288 F.3d 149, 151 (5th Cir. 2002)("It is well-established that we may only

affirm the Commissioner's decision on the grounds which he stated for doing so.").  However,

perfection in administrative proceedings is not required. *See Mays v. Bowen*, 837 F.2d 1362,

1364 (5th Cir. 1988).

Here, the thoroughness of the ALJ's decision shows he carefully considered the medical

records and testimony, and his determination reflects those findings accurately.  The ALJ

summarized the evidence and set forth specific reasons concerning the weight given to the

opinions of the medical sources.

There are medical records with diagnoses from Dr. Edward W. Guinn, M.D., FAAFP, a

general practitioner and Locke's treating physician, Dr. Ade L. Adedokun, RPh., D.O., who

conducted a court ordered post-hearing consultative exam on Locke, and Dr. Joe E. Wheeler,

M.D., P.A., the neurosurgeon who performed Locke's original back surgery.  Dr. Guinn began

treating Locke for back pain as early as July 1988; but, did not issue any medical evaluations for

Locke, other than sparse visit notes, until he issued a medical report in 2007. (Tr. 127, 130).  Dr.

Guinn's initial medical report from June 2007, diagnosed Locke as suffering from a low back

strain and muscle spasm involving the low back and the lower extremities, and gave a prognosis

of total and permanent disability. (*Id.*).  Likewise, in a follow-up report by Dr. Guinn from

December 2007, Locke was again diagnosed as suffering from a low back strain and muscle

spasm, as well as neuritis, with a prognosis of total and permanent disability. (Tr. 193-94).  Dr.

Guinn treated Locke's ailments with myogesic muscle relaxant medication, limited prescribed

activity, rest, and home exercises. (Tr. 130, 194).  However, Dr. Guinn's statements are not

supported by clinical observations or detailed diagnostic evidence; rather, the majority of the

doctor's notes simply list Locke's symptoms and the medication prescribed at each visit.  (Tr.

86-127, 130-32, 193-97).

Dr. Adedokun examined Locke on October 3, 2007, at the request of the ALJ.  (Tr. 25,

140).  At the visit, Dr. Adedokun confirmed Locke's lumbar problems, and also determined

Locke suffered from morbid obesity, as well as, osteoarthritis of the knees.  (Tr. 142).  Dr.

Adedokun noted, however, that Locke exhibited evidence of symptom magnification and did not

give a full effort for his physical examination despite his muscle strength being at least 4/5 and

having no deep tendon reflex abnormalities.  (Tr. 140-42).  During the visit, Dr. Adedokun also

performed a Residual Functional Capacity Assessment (RFC) in which he found Locke could:

frequently lift and/or carry up to twenty pounds; stand and/or walk for six hours in an eight hour

workday; sit for all eight hours of a workday; and frequently climb, balance, stoop, kneel,

crouch, and/or crawl.  (Tr. 144-49).

Dr. Wheeler examined Locke on April 8, 2008, at the request of Dr. Guinn, and saw

Locke on May 22, 2008, and June 19, 2008, for follow up visits.  (Tr. 216, 217, 223).  Dr.

Wheeler noted Locke did not experience tenderness, spasms, atrophy, or swelling in his lumbar

spine region.  (Tr. 209).  Likewise, the doctor found Locke's straight leg raising negative to 90

degrees bilaterally.  (Tr. 218).  However, Dr. Wheeler determined Locke did suffer from severe

spinal stenosis at the L3-4 level.  (Tr. 223).  In addition, the doctor found Locke could only sit

for two hours; stand/walk for two hours; and would need to get up and move around every

fifteen minutes during an eight-hour work day.  (Tr. 211).

The ALJ did not err in his assessment of the medical opinions and diagnoses.  To the extent Locke argues the ALJ erred by disregarding the treating physician's findings of permanent disability, the Fifth Circuit has held that a physician's opinion that a claimant is "disabled" is not the type of doctor's opinion that is given special "significance."  *Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003); 20 C.F.R. § 404.1527(e)(1)("[a] statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled").  Furthermore, it was appropriate for the ALJ to decline to give controlling weight to Dr. Guinn's statement regarding Locke's disability because physicians generally define "disability" in a manner distinct from the Act.  *Tamez v. Sullivan*, 888 F.2d 334, 336, n. 1 (5th Cir. 1989).

Moreover, the gaps in Dr. Guinn's treatment of Locke, from November 1988 to February 2005 and from April 2005 to April 2006, support the ALJ's taking into account Locke's lack of need for consistent and regular medical treatment in evaluating his condition.  *Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990).   Locke's lack of treatment for any psychological disability further indicates the ALJ, contrary to Locke's assertion, also did not err in evaluating Locke's mental impairments.  *Id.*  The mere mention of some impairment is not disabling per se, and Locke provided no evidence that he was impaired by "stress" or "anxiety," therefore, the ALJ was correct to evaluate and dismiss those complaints.  *Hames*, 707 F.2d at 165.

Still, Locke argues he was denied due process and stripped of his ability to fully present his case because the ALJ denied Locke's request for issuance of a subpoena to Dr. Adedokun's nurse. (Document No. 7 at 7-10).  Locke contends the ALJ was required by the Fifth Circuit to issue the requested subpoena following his post-hearing examination.  *Lidy v. Sullivan*, 911 F.2d 1075 (5th Cir. 1990).  *Lidy* does require the issuance of a subpoena, subsequent to a post-hearing examination, to allow the claimant to cross-examine a "treating or examining physician."  *Id.* at

1077.  However, in this case, Locke wanted the ALJ to issue the subpoena for the examining

physician's nurse, who does not fall within the Fifth Circuit's automatic subpoena issuance

requirement.  *Id.*  Thus, Locke's request was within the ALJ's discretion to grant or deny.  In

addition, agency regulations provide that in order to have an ALJ issue a subpoena a party must

"state the important facts that the witness…is expected to prove; and indicate why these facts

could not be proven without a subpoena."  20 C.F.R. § 404.950(d)(2).  Locke failed to indicate

the relevance of Dr. Adedokun's nurse's possible testimony other than stating: "I feel her

testimony is vital to my case." (Tr. 199).  Therefore, the ALJ had no basis for granting the

subpoena request.

The ALJ sufficiently detailed the weight given to the medical opinions, and made it clear

why he chose to give more weight to Dr. Adedokun, the specialist; rather than Locke's treating

physician, a general practitioner, who provided only sparse notes and few clinical or diagnostic

findings describing Locke's condition and treatment.  The weight of the evidence supported a

conclusion contrary to Dr. Guinn's position; thus, the ALJ acted appropriately in dismissing the

treating physician's opinions.  *Martinez*, 64 F.3d at 176; *Bradley*, 809 F.2d at 1057.

Moreover, the results of Dr. Wheeler's examinations fail to support his finding Locke's

ability to function severely limited.  The Appeals Council's determination that Dr. Wheeler's

records provided no new and material evidence constituting a basis to review the ALJ's decision

further supports the ALJ's findings in this case.

Given the thoroughness of the ALJ's discussion of the objective medical evidence, and

the reliance on the opinion of Dr. Adedokun, whose opinion was found to be credible and

consistent with the medical evidence as a whole, the Court concludes the diagnosis and expert

opinion factor also supports the ALJ's decision.

## C. Subjective Evidence of Pain

The next element to be weighed is the subjective evidence of pain, including the claimant's testimony and corroboration by family and friends.  Not all pain is disabling, and the fact a claimant cannot work without some pain or discomfort will not render him disabled. *Cook*, 750 F.2d at 395.  The proper standard for evaluating pain is codified in the Social Security Disability Benefits Reform Act of 1984, 42 U.S.C. § 423.  The statute provides allegations of pain do not constitute conclusive evidence of disability.  42 U.S.C. § 423.  There must be objective medical evidence showing the existence of a physical or mental impairment which could reasonably be expected to cause pain.  *Id.*  Statements made by the individual or his physician as to the severity of the plaintiff's pain must be reasonably consistent with the objective medical evidence on the record.  *Id.*  "Pain constitutes a disabling condition under the SSA only when it is 'constant, unremitting, and wholly unresponsive to therapeutic treatment.'" *Selders*, 914 F.2d at 618-19 (citing *Darrell v. Bowen*, 837 F.2d 471, 480 (5th Cir. 1988)).  Pain may also constitute a non-exertion impairment which can limit the range of jobs a claimant would otherwise be able to perform.  *See Scott v. Shalala*, 30 F.3d 33, 35 (5th Cir. 1994).  The Act requires this Court's findings to be deferential.  *Hames*, 707 F.2d at 166.  The evaluation of evidence concerning subjective symptoms is a task particularly with the province of the ALJ, who has had the opportunity to observe the claimant.  *Id.*

At his initial hearing with the ALJ, Locke testified he is unable to work because of back pain.  He stated:

ALJ:   Are the physical problems you have the only reason you're not working?

CLMT: Yes, um-hum.

ALJ:   And of all the physical problems you have, which one bothers you the most?

20

> CLMT:  My lower - - my whole spine hurts.  If I stand too long, my whole spine hurts because I had back surgery

(Tr. 228-29).  Locke stated he controls his pain by taking medication, lying down, wearing special shoes, and taking a shower.  (Tr. 229-30, 236, 237).  Locke spends most of his time at home watching television or reading the Bible, but he will occasionally make trips to the convenience store or to visit his mother and his friends.  (Tr. 234, 238).  Locke further testified he helps his wife with light household chores, such as washing dishes, and occasionally stoops or reaches for items around the house.  (Tr. 239-41).  According to Locke, he can stand without sitting down for ten to fifteen minutes. (Tr. 237).  Moreover, at his supplemental hearing six months after Locke's initial hearing with the ALJ, Locke testified his condition and pain were worse, and he was seeing his physician more frequently.  (Tr. 260-61).

In light of Locke's statements, and based on the reasons that follow, the ALJ rejected Locke's testimony as not fully credible:

> While claimant's testimony and other statements regarding daily activities, restrictions and symptoms are evaluated, they are among several factors I considered and are not controlling.

> I recognize that claimant still experiences some degree of pain or discomfort at times of overexertion, but even a moderate level of pain is not, by itself, incompatible with the performance of certain levels of sustained work activity. Here, neither the objective medical evidence nor reasonable inference, nor any other non-medical evidence establishes that claimant's present ability to function is so severely impaired as to preclude the performance of all work activities.

> Dr. Adedokun, [who conducted a court ordered examination of Locke], stated that the exam was very difficult, as claimant complained of pain even with slight touch, he did not give full effort and there was evidence of symptom magnification, but his muscle strength was at least 4/5 and there were no deep tendon reflex abnormalities.  I am aware of the rationale behind the exception to the hearsay rule found at FRE 803(4):  statements for purposes of medical diagnosis or treatment are ordinarily more trustworthy than most other statements because there is little reason to mislead a physician as one seeks help for a medical condition.  Thus, by these verbal acts, his lack of cooperation with the

21

> Administration in this review, and the general inconsistencies of his testimony, I
> have concluded that claimant has again impeached his credibility and, because he
> is willing to compromise even the patient-physician relationship to serve his own
> purposes, I assess little probative value to his testimony and other statements.

(Tr. 26-27). The undersigned finds there is nothing in the record to suggest the ALJ made improper credibility findings, or that he weighed the testimony improperly. There are significant inconsistencies between Locke's subjective complaints and the objective medical evidence. The ALJ identified the discrepancies and gave specific reasons for rejecting Locke's subjective complaints, such as the lack of medical evidence to support his subjective symptoms. Accordingly, this factor also supports the ALJ's decision.

### D.  Education, Work History, and Age

The final element to be weighed is the claimant's educational background, work history and present age. A claimant will be determined to be under disability only if the claimant's physical or mental impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d)(2)(A).

The record shows the ALJ questioned Shelly K. Eike, MS, CRC, LPC, a vocational expert (VE), at the June 08, 2007, hearing about Locke's ability to engage in gainful work activities. (Tr. 244). "A vocational expert is called to testify because of his familiarity with job requirements and working conditions. 'The value of a vocational expert is that he is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed.'" *Vaughan v. Shalala*, 58 F.3d 129, 131 (5th Cir. 1995)(quoting *Fields v. Bowen*, 805 F.2d 1168, 1170 (5th Cir. 1986)). It is well settled that a vocational expert's testimony, based on a properly phrased hypothetical question, constitutes substantial evidence. *Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994). A hypothetical question is

sufficient when it incorporates the impairments which the ALJ has recognized to be supported by the whole record. *Id.* Beyond the hypothetical question posed by the ALJ, the ALJ must give the claimant the "opportunity to correct deficiencies in the ALJ's hypothetical questions (including additional disabilities not recognized by the ALJ's findings and disabilities recognized but omitted from the question)." *Id.*

The ALJ posed the following hypothetical questions to the VE:

ALJ: So if the claimant were limited to work that was at the sedentary exertional level where he would sit for as much as six hours of the workday and stand and walk for as little as two hours, would he be able to perform any of his prior work?

VE: No, he would not.

ALJ: Now, if we took an individual like the claimant, same age, education, work experience, but limited to sedentary work where he would have an opportunity to alternate between sitting and standing during the workday on an intermittent basis, he did not have to work at heights or around dangerous moving machinery and he did not have to walk on uneven surfaces, would there be any job that exists in the national economy such an individual could perform?

VE: Yes, there are unskilled entry level jobs.

ALJ: What would those jobs be?

VE: That would include such work as sedentary small product assembler positions and at the SVP two level with the sit/stand capability, numbers nationally I would estimate at least 50,000 jobs; in the Texas economy, at least 5,000 jobs. Also there unskilled small part inspectors and at a sedentary level in the national economy, I would estimate at least 40,000 jobs and in Texas, approximately 3,400.    And there are sedentary positions such as a hand production worker.  Nationally, I would estimate 49,000 jobs and in the Texas economy, 4,300.

ALJ: Now would any of these jobs or any job for that matter permit this hypothetical individual to perform work if they had to lay down from time to time in some fashion on the floor, or a recliner, or in a bed during the course of the workday?

VE: No, they would not.

(Tr. 246-47). The record further reveals Locke was given the opportunity to question the VE, but Locke only questioned the ALJ about how the VE could make findings about his condition and failed to ask the VE anything of relevance. (Tr. 247-50).

Here, the ALJ relied on a comprehensive hypothetical question to the vocational expert. A hypothetical question is sufficient when it incorporates the impairments which the ALJ has recognized to be supported by the record as a whole. *Bowling*, 36 F.3d at 436. Upon this record there is an accurate and logical bridge from the evidence to the ALJ's conclusion Locke was not disabled. Based on the testimony of the vocational expert and the medical records, substantial evidence supports the ALJ's finding Locke could perform sedentary work. Locke argues, due to his need for an intermittent sit/stand option, his potential work ability falls outside the definition of sedentary work. (Document No. 7 at 18-20). However, the Social Security Rulings and case law only require, "in cases of unusual limitation of ability to sit or stand, a [vocational expert to] be consulted to clarify the implications for the occupational base." *Scott*, 30 F.3d at 35; SSR 83-12, 1983 WL 31253, *4. Here, the aforementioned requirement was satisfied because the VE was consulted and she determined occupations were available to Locke, despite his need for an intermittent sit/stand option.

Because the hypothetical questions contained all the functional limitations recognized by the ALJ, the Court concludes the ALJ's reliance on the vocational testimony was proper, and the VE's testimony, along with the medical evidence, constitutes substantial evidence to support the ALJ's conclusion Locke was not disabled within the meaning of the Act and therefore was not entitled to benefits. It is clear from the record proper legal standards were used to evaluate the evidence presented. Accordingly, this factor also weighs in favor of the ALJ's decision.

## V. Conclusion

Considering the record as a whole, the Court is of the opinion the ALJ and the Commissioner properly used the guidelines propounded by the Social Security Administration, which direct finding Locke was not disabled with the meaning of the Act, substantial evidence supports the ALJ's decision, and the Commissioner's decision should be affirmed.  As such, it is

ORDERED Plaintiff's Motion for Summary Judgment (Document No. 7) is DENIED, Defendant's Motion for Summary Judgment (Document No. 11) is GRANTED, and the decision of the Commissioner of Social Security is AFFIRMED.

Signed at Houston, Texas, this 22d day of June , 2010.


FRANCES H. STACY
UNITED STATES MAGISTRATE JUDGE